# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| EUGENE DEVBROW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:07-cv-1355-LJM-TAB |
| | ) | |
| KELLY CARROLL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## Entry Discussing Motion for Summary Judgment

Eugene Devbrow, a former inmate of the Pendleton Correctional Facility ("Pendleton"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants exhibited deliberate indifference to his serious medical needs. While an inmate at Pendleton, Devbrow developed prostate cancer which metastasized to his bones. In this motion for summary judgment, defendants Kelley Carroll and Dr. Hermena argue that Devbrow's lawsuit is barred by the applicable statute of limitations.

## Summary Judgment Standard

A court will grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 ((7th Cir. Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 ( 1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). The means by which this purpose is accomplished is by "pierc[ing] the pleadings and . . . assess[ing] the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

> At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly.

*Thompson Everett, Inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir. 1995). Succinctly stated, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). The methodology for acting on a motion for summary judgment is this:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); id. at 325, 106 S. Ct. at 2554 ("the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324, 106 S. Ct. at 2553.

*Selan v. Kiley,* 969 F.2d 560, 564 ((7th Cir. Cir. 1992). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 ((7th Cir. Cir. 2002)(internal quotation and citation omitted). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 ((7th Cir. Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

**Material Facts**

The following statement of undisputed material facts is obtained pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Devbrow as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

- On February 3, 2004, Kelley Carroll, a nurse practitioner at Pendleton, requested a urology consult because Devbrow was concerned about a family history of cancer. Dr. Hermena also submitted a request for a urology consult. She noted that Devbrow was asymptomatic, but his recent PSA was 13.3 and he should have a urology consult to evaluate BPH (benign prostatic hyperplasia/or benign tumor) versus prostate cancer. Dr. Kalu responded to the request and instructed Dr. Hermena to obtain Devbrow's prior medical records. On February 10, 2004, Carroll ordered a prostate ultrasound. On February 11, 2004, Devbrow's PSA level was checked and was 14.1. On February 17, 2004, Devbrow had a chronic care exam.

Dr. Hermena examined Devbrow and found that his prostate was enlarged, but that he had no rectal mass. Dr. Hermena also submitted a request for a urology consult, and Dr. Kalu responded to the request and instructed Dr. Hermena to obtain Devbrow's prior medical records.

- On February 23, 2004, Dr. Hermena instructed medical staff to tell Devbrow to urgently obtain his outside medical records so he can review the results of Devbrow's prior biopsy. He also instructed medical staff to schedule Devbrow for a prostate ultrasound on site until Devbrow's referral to urology was completed.

- On March 4, 2004, Devbrow had a prostate ultrasound, which showed no hypoechoic lesions and that further evaluation may be needed depending on PSA level and exam.

- On March 10, 2004, Dr. Hermena met with Devbrow to discuss the recent ultrasound results and told Devbrow to obtain his outside records as soon as possible so they could be sent to Dr. Kalu and get Devbrow approved for a biopsy.

- On March 12, 2004, an authorization for Devbrow's medical records was sent to Matthew 25 Health Clinic in Fort Wayne. On July 2, 2004, Dr. Hermena requested a urology consult for Devbrow. Dr. Hermena noted on the request form that he sent Dr. Kalu the results of Devbrow's prior biopsy, which was benign, and the results of Devbrow's prostate ultrasound. In response to this consultation request, Dr. Kalu recommended an alternative treatment plan of on-site antagonistic treatment.

- On August 7, 2004, Devbrow had a chronic care exam. Carroll requested a urology consult and gave Dr. Kalu Devbrow's history. Dr. Kalu recommended antagonist treatment rather than a referral to a urologist. On February 8, 2005, Devbrow had a chronic care exam. Nurse Practitioner Carroll requested PSA levels and noted that Devbrow declined the use of antagonist medication. On February 10, 2005, Devbrow's PSA level was drawn and was 18.1. On February 11, 2005, Nurse Practitioner Carroll scheduled Devbrow for a digital rectal exam with Dr. Hermena. On February 14, 2005, Dr. Hermena performed a digital rectal exam and found Devbrow's prostate enlarged and hard to palpation. He again recommended a urology referral and biopsy. Dr. Hermena submitted a request form for a urology consultation and noted Devbrow's history.

- On February 15, 2005, Devbrow was approved for a urology consultation. On March 1, 2005, Devbrow asked for the status of his prostate biopsy and urology consult and was told that they were waiting on Wishard Hospital to schedule the appointment.

- On March 18, 2005, Devbrow went to Wishard Hospital Urology Clinic and Wishard Hospital recommended a TRUS (trans-rectal ultrasound guided) biopsy. On March 20, 2005, Nurse Practitioner Carroll completed a request form for the TRUS biopsy. On April 27, 2005, Devbrow had a prostate TRUS biopsy at Wishard Hospital. The biopsy showed, "high grade prostatic intraepithelial neoplasia."

• On May 17, 2005, Devbrow went to Wishard Hospital for a follow-up exam. The treatment plan developed by Wishard Hospital was for Devbrow to return for a repeat biopsy in 4-6 months.

• On May 19, 2005, Carroll requested Devbrow's repeat biopsy in 4-6 months. On September 2, 2005, Devbrow had a chronic care exam and was told that his biopsy appointment was scheduled. On September 21, 2005, Devbrow went to Wishard Hospital for a repeat TRUS biopsy, pursuant to Wishard Hospital's treatment plan. However, the biopsy could not be completed because Devbrow was taking aspirin, so Wishard Hospital instructed Devbrow to stop taking aspirin and to return in 1-2 weeks for the TRUS biopsy.

• When Devbrow returned to the prison, he was taken off of aspirin. On September 28, 2005, Devbrow returned to Wishard Hospital for the TRUS biopsy. The biopsy was completed and showed adenocarcinoma.

## Discussion

As noted, Devbrow's action is brought pursuant to 42 U.S.C. § 1983 and alleges that the defendants, including Kelley Carroll and Dr. Hermena, exhibited deliberate indifference to his serious medical needs through their failure to order diagnostic tests that would diagnose possible prostate cancer. He goes on to allege that because of such failures, by the time he was diagnosed, the cancer had metastasized to his lumbar spine.

Defendants Kelley Carroll and Dr. Hermena argue that Devbrow's deliberate indifference claim is barred by the statute of limitations.

A suit under 42 U.S.C. § 1983 must be filed within the time allowed by state law for personal injury actions. Wilson v. Garcia, 471 U.S. 261 (1985). In Indiana, that period is two (2) years. *Forman v. Richmond Police Department,* 104 F.3d 950 ((7th Cir. Cir. 1997) ("[T]he two-year Indiana statute of limitations for personal injuries (IND. CODE § 34-1-2-2) applies to § 1983 claims.") (citing *Perez v. Sifel,* 57 F.3d 503, 505 ((7th Cir. Cir. 1995)).

When a § 1983 claim accrues it is an issue of federal law, see *Sellars v. Perry,* 80 F.3d 243, 245 ((7th Cir. Cir. 1996), and the federal rule is that a cause of action accrues "when the plaintiff has a 'complete and present cause of action' . . . that is 'when the plaintiff can file suit and obtain relief." *Wallace v. Kato,* 127 S. Ct. 1091, 1095 (2007).

The defendants argue that Devbrow's cause of action accrued and the statute of limitations began to run when he received the diagnostic tests he desired. Devbrow argues on the other hand that his cause of action did not accrue until he learned that he had prostate cancer and that the allegedly late diagnosis of the cancer allowed it to metastasize and become inoperable.

Devbrow alleges that his rights were violated due to a delay in adequate medical care to diagnose his prostate cancer. He became aware of this constitutional violation when his requests for a biopsy were delayed. *See Wilson v. Geisen*, 956 F.2d 738, 740 (7th Cir.

1991) (civil rights claims under § 1983 accrue when the "plaintiff knows or should know that his or her constitutional rights have been violated"); *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) ("a constitutional claim is stated when prison officials intentionally deny access to medical care or interfere with prescribed treatment") *citing Estelle v. Gamble*, 429 U.S. 97, 104-05 (2d Cir. 1977); *see also Hawkins v. Spitters*, 79 Fed.Appx. 168, 169 (6th Cir. 2003) ("A review of the complaint clearly establishes that Hawkins argued that his rights were violated when the defendants denied his requests for an expert evaluation.").

Devbrow had notice of his allegedly untreated medical condition in February 2004. At that time, he requested diagnostic tests for prostate cancer and did not receive the tests he now alleges he should have received. He had his first prostate biopsy on April 27, 2005 and his second biopsy on September 28, 2005. In other words, Devbrow knew of a potential constitutional violation in February 2004 when his initial requests for diagnostic tests were denied or delayed. The delay in testing continued until April 27, 2005, when he had his first biopsy for prostate cancer. His cause of action for deliberate indifference accrued therefore not later than April 27, 2005. Because the statute of limitations for Devbrow's claims is two years, he had until April 27, 2007, in which to file suit. Because he did not file this lawsuit until October 19, 2007, his claims against Kelley Carroll and Dr. Hermena are barred by the statute of limitations. Accordingly, these defendants' motion for summary judgment [67] must be **granted**.

## Conclusion

The motion for summary judgment of defendants Hermena and Carroll [67] is **granted**. This ruling resolves all claims against these defendants. Their second motion for summary judgment [112] and motion to strike [117] are therefore **denied as unnecessary.** Devbrow's claims against defendant Kalu remain. No partial final judgment shall issue at this time as to the claims resolved in this Entry.

**IT IS SO ORDERED.**

Date: 03/17/2011

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Samuel Mark Adams
MICHEAL K. SUTHERLIN AND ASSOCIATES
msutherlin@gmail.com

James F. Bleeke
 BLEEKE DILLON CRANDALL PC
jim@bleekedilloncrandall.com

Carol A. Dillon
SWEETIN & BLEEKE, P.C.
carol@bleekedilloncrandall.com

Roger K. Kanne
ZEIGLER COHEN & KOCH
rkanne@zcklaw.com

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@gmail.com

Ned J. Tonner
NED J. TONNER, ATTORNEY AT LAW
ned@tonnerlaw.com

Andrew P. Wirick
HUME SMITH GEDDES GREEN & SIMMONS
awirick@humesmith.com